89 F.3d 844
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Betsy Margina CISNEROS, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70920.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1996.*
Decided May 2, 1996.
 
 1
 Before: BROWNING and NOONAN, Circuit Judges; MERHIGE, District Judge**.
 
 
 2
 MEMORANDUM***
 
 
 3
 Betsy Margina Cisneros petitions for review of the denial of her claim for asylum. We deny her petition.
 
 FACTS AND PROCEEDINGS
 
 4
 On February 13, 1989, the Immigration and Naturalization Service (INS) issued Cisneros, a native of Nicaragua, an order to show cause, which charged her of having entered the United States illegally. On July 11, 1989, Cisneros appeared with counsel before Immigration Judge James P. Vandello (IJ Vandello), admitted the allegations in the order to show cause, and conceded deportability. IJ Vandello designated Nicaragua as the country of deportation, and Cisneros stated her intention of seeking asylum.
 
 
 5
 Cisneros's hearing resumed on March 21, 1990, before Immigration Judge Gary Burkholder (IJ Burkholder) with the presence of a Spanish interpreter. At the hearing, Cisneros testified to the following: She was 21 years old, born in Corinto and raised in Managua, Nicaragua. Her mother and one of her sisters live with her in the United States, while her father lives in Miami. Her parents and her sister are also applying for asylum. She entered the United States on January 12, 1987 after having left Nicaragua on January 8, 1987. One of her older sisters, who apparently could not get a visa to leave Nicaragua, still lives in Nicaragua, along with her adopted brother. Cisneros claims that her sister says that she is sometimes harassed in Nicaragua. While in the United States, Cisneros was attending Mission College in Santa Clara and had a job working as a microscope inspector.
 
 
 6
 Cisneros said that she left Nicaragua because she wanted to get away from the Sandinista party, which she had joined while in the army military reserve so she could enroll in the university. She said that the Sandinistas wanted her to participate with the mob of "Turbas," a youth organization of the Sandinistas, who harassed opponents of their party and painted graffiti on houses. Cisneros refused to join the Turbas, and her family and she were harassed by them. Her house was painted with graffiti on one occasion with words to the effect, "We know that you're in here. We are going to kill you." The graffiti was signed with an "S," which Cisneros took to mean the Sandinistas because "they are the only enemies that" her family had.
 
 
 7
 Cisneros explained that her father was a member of the Somoza Liberal Party and had worked as a customs official for the Somoza government. After the revolution, in 1979, he was imprisoned without trial for a year and a half and then released in 1980. Her father said he was beaten in prison. After his release, the Sandinistas twice entered her family's house, once to look for something, such as incriminating documents, that would put him in a compromising position. Cisneros claims that during these searches the Sandinistas "just beat us and pushed us." Her father was not arrested again.
 
 
 8
 Cisneros spoke of other problems she faced after these incidents, although she herself had never been detained or arrested by the Sandinistas. While she attended a public high school, she was taught Marxism and asked to work on Saturdays and Sundays and to participate in meetings. She then left for private school because she didn't want to join the meetings, after which time the public school students on her bus, children of Sandinista members, would push and shove her because she was attending private school. Cisneros was "very much afraid of being by [herself] alone in the streets" at that time. Cisneros went to private high school for three years, during which she joined the army reserves which was a requirement to enroll at a university.
 
 
 9
 During her time in the army reserves, Cisneros said that her superiors asked her to paint graffiti on the walls but she refused. She also stated that she felt always under surveillance by the Sandinistas because they knew that her father was a part of the Somoza party. Cisneros deserted the reserves.
 
 
 10
 Cisneros stated that she was afraid to return to Nicaragua because she does not know what would happen to her there. She also did not feel any safer by the fact that the Sandinista party lost the recent presidential elections because the civil war was still going on and still worried her.
 
 
 11
 IJ Burkholder denied Cisneros's request for asylum, finding that she had not shown either a past persecution or a well-founded fear or reasonable probability of future persecution upon return to Nicaragua. As to the former finding, IJ Burkholder noted that Cisneros was 10 years old at the time of the Sandinista revolution but she had never been arrested; that she had not ever been seriously injured from her fights with public school students; that her fear of being alone on the streets was understandable for a young girl in a country undergoing political and social turmoil; and that the Sandinistas granted her an exit permit to leave Nicaragua. Likewise, IJ Burkholder found no proof that she would be persecuted in the future upon return to Nicaragua, especially in light of the recent change in government there. IJ Burkholder concluded that even if she had been persecuted in the past, he would deny asylum because of the unlikelihood of future persecution. IJ Burkholder also denied Cisneros's request for withholding of deportation, finding that she had not proven a clear probability that she would be persecuted upon return to Nicaragua. On December 2, 1994, the Board of Immigration Appeals (the BIA) affirmed the IJ's decision in a 3-page order. On December 28, 1994, Cisneros timely filed a petition for review.
 
 ANALYSIS
 
 12
 We affirm the BIA's decision as supported by substantial evidence. As to past persecution, Cisneros offered as proof the harassment she received as a private high school student and the harassment and surveillance to which her family was subjected. Cisneros, however, was never arrested, detained, or physically abused by the Sandinistas. Although her family's home was searched on two occasions, and her father was imprisoned for over a year, these incidents were the only examples suggesting that the Sandinistas might have taken a particular interest in her or her family. These incidents do not show persecution, or "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." Desir v. Ilchert, 840 F.2d 723, 727 (9th Cir.1988). Cisneros also failed to show a well-founded fear of persecution. The record contains no evidence suggesting that the Sandinistas in Nicaragua--who, incidentally, are no longer in control of the government--are concerned about Cisneros's whereabouts. The circumstances are not such that a reasonable factfinder must conclude that the requisite fear of persecution existed. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Kotasz v. INS, 31 F.3d 847, 852 (9th Cir.1994).
 
 
 13
 Accordingly, we DENY her petition.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for Eastern Virginia, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3